1  MELISSA W. COOK, ESQ.; SBN 134791
   mwccoast@aol.com
2  ERIN E. DAVIS, ESQ.; SBN 259453
   ee.davis@sbcglobal.net
3  MELISSA W. COOK & ASSOCIATES
   3444 Camino del Rio North, Suite 106
4  San Diego, California 92108
   Telephone: (619) 280-4302
5  Facsimile: (619) 280-4304

6  Attorneys for Plaintiffs

7

8              UNITED STATES DISTRICT COURT

9            EASTERN DISTRICT OF CALIFORNIA

10

11  BOARD OF TRUSTEES OF THE        ) Case No.  08 CV-00498-LJO-JLT
    KERN COUNTY ELECTRICAL          )
12  PENSION FUND, BOARD OF          )
    TRUSTEES OF THE KERN COUNTY     ) DECLARATION OF MICHAEL
13  ELECTRICAL WORKERS HEALTH       ) SUROWITZ IN SUPPORT OF
    & WELFARE TRUST, AND BOARD      ) PLAINTIFFS' APPLICATION FOR
14  OF TRUSTEES OF THE KERN         ) DEFAULT JUDGMENT BY COURT
    COUNTY ELECTRICAL               )
15  JOURNEYMAN AND                  )
    APPRENTICE TRAINING TRUST,      )
16                                  )
                                    ) Hearing Date:   June 1, 2012
17         Plaintiffs,              ) Time:           9:00 am
                                    ) Courtroom:      Suite A
18      v.                          ) Judge:          Hon. Jennifer Thurston
                                    )
19  CHRISTOPHER BURGONI, an         )
    individual, and doing business as )
20  ALPHA OMEGA ELECTRIC;           )
    TADOC ENTERPRISES, INC., a      )
21  California corporation doing business )
    as ALPHA OMEGA ELECTRIC;       )
22  FULCE ENTERPRISES, INC., a      )
    California corporation, and DOES 1 )
23  through 50, inclusive,          ) Complaint Filed: April 10, 2008
                                    )
24         Defendants.              )

25  I, Michael Surowitz, declare as follows:

26      1.    I am employed as an auditor with Compliance Verification, Inc., the

27  auditing firm employed by the Kern County Electrical Workers Trust Funds,

28  comprised of the Kern County Electrical Pension Fund, Kern County Electrical

1  Workers Health & Welfare Trust, and the Kern County Electrical Journeyman and
2  Apprentice Training Trust for the purpose of auditing the books and records of Alpha
3  Omega Electric.  I am familiar with the facts stated herein and if called upon as a
4  witness, I could and would competently testify thereto.

5       2.     I was asked by Plaintiffs to audit the books and records of
6  Defendant Christopher Burgoni, doing business as Alpha Omega Electric, for the time
7  period of July 6, 2000 through December 31, 2007.  I was also asked to audit the
8  books and records of Tadoc Enterprises, doing business as Alpha Omega Electric,
9  and Fulce Enterprises, Inc., doing business as Technology Distribution Company.  I
10 was asked to audit all three entities as a result of Plaintiffs finding evidence that all
11 three entities were performing work as Alpha Omega Electric, and/or being used by
12 Defendant Burgoni to evade his obligations under his Collective Bargaining
13 Agreement ("CBA") that obligated him to pay fringe benefit contributions to
14 Plaintiffs.

15      3.     My review of the entities' books and records indicated that from the
16 beginning of my audit review period up until October, 2006, Defendant Burgoni,
17 doing business as Alpha Omega Electric, subcontracted work covered by the CBA
18 to an individual named Doug Kennedy, and Fulce Enterprises, Inc., doing business
19 as Technology Distribution Company.  Fulce Enterprises, Inc. was owned by an
20 individual named Neil Fulce.  On October 6, 2006, Defendant Burgoni brought on
21 Neil Fulce as a business partner for Tadoc Enterprises, Inc., and continued doing
22 business under the name Alpha Omega Electric.

23      4.     Based on the common ownership and work performance of the
24 aforementioned individuals and entities, and given that all entities performed work
25 under the operation, control and name of Alpha Omega Electric, Section 2.42 of the
26 CBA allows the Trust Funds to collect contributions for all hours of covered work
27 performed under the CBA by the entities commonly owned.  Please see Page 8 of the
28 CBA, a true and correct copy of which is attached hereto as Exhibit "A".

Dec. of Michael Surowitz In Sup. Of Plaintiffs' App. For Default Judgment    Case No. 08 CV-00498-LJO-JLT

1       5.      My review of the Defendants' books and records also found that

2   Defendant Burgoni's subcontracting of covered work to Doug Kennedy and Fulce

3   Enterprises violated Section 2.25 of the CBA, which prohibits the subletting,

4   assigning or transfer by an employer of any work covered by the CBA to any

5   individual or organization that is not also signatory to the CBA. Please see Page 6

6   of Exhibit "A".

7       6.      Based on my review of the Defendants' books and records, I

8   determined that Alpha Omega Electric owed contributions for the following:

9               a.      $3,632.63 for contributions owed for hours of work performed

10  by Doug Kennedy, as a result of Alpha Omega's hiring of Doug Kennedy in

11  violation of the CBA, for the time period of August 2004 through October 2004.

12  Please see the column for "Schedule A" on my audit report, attached hereto as

13  Exhibit "B".

14              b.      $85,414.18 for contributions owed for hours of work performed

15  by Fulce Enterprises, as a result of Alpha Omega's hiring of Fulce Enterprises in

16  violation of the CBA, for the time period of June 2004 through November 2006.

17  Please see the column for "Schedule B" on my audit report attached hereto as

18  Exhibit "B".

19              c.      $151,214.67 for contributions owed for hours of work performed

20  by Tadoc Enterprises, Inc., under the payroll of Alpha Omega Electric, for the time

21  period of June 2006 through December 2007. Please see the column for "Schedule

22  C" on my audit report attached hereto as Exhibit "B".

23      7.      In total, the defendants known and commonly operating as Alpha

24  Omega Electric owe $240,261.48 in contributions to Plaintiffs for the time period

25  of August 2004 through December 2007.

26      8.      Because the Trust Agreements provide for the assessment of liquidated

27  damages at the rate of ten percent (10%) for all delinquent contributions owed to

28  Plaintiffs, I calculated liquidated damages as follows:

1           a.      $363.63 for contributions owed for hours of work performed by

2 Doug Kennedy, as a result of Alpha Omega's hiring of Doug Kennedy in violation

3 of the CBA, for the time period of August 2004 through October 2004. Please see

4 the column for "Schedule A" on my audit report, attached hereto as Exhibit "B".

5           b.      $8,541.42 for contributions owed for hours of work performed

6 by Fulce Enterprises, as a result of Alpha Omega's hiring of Fulce Enterprises in

7 violation of the CBA, for the time period of June 2004 through November 2006.

8 Please see the column for "Schedule B" on my audit report attached hereto as

9 Exhibit "B".

10           c.      $15,121.47 for contributions owed for hours of work performed

11 by Tadoc Enterprises, Inc., under the payroll of Alpha Omega Electric, for the time

12 period of June 2006 through December 2007. Please see the column for "Schedule

13 C" on my audit report attached hereto as Exhibit "B".

14      9.      In total, the defendants known and commonly operating as Alpha

15 Omega Electric owe $24,026.15 in liquidated damages to Plaintiffs for the time

16 period of August 2004 through December 2007.

17      10.     I billed Plaintiffs $3,358.47 for my services in performing this audit

18 and preparing my attached audit report. A true and correct copy of my billing

19 statements is attached hereto as Exhibit "C".

20      11.     Cumulatively, Alpha Omega owes $267,646.10, inclusive of

21 contributions, liquidated damages, and audit fees.

22      I declare under penalty of perjury under the laws of the State of California

23 that the foregoing is true and correct and this declaration was executed on this   25 

24 day of   April   2012, at San Diego, California.

25

26                        /s/Michael Surowitz (original signature retained by attorney)

                                Michael Surowitz

27

28

Dec. of Michael Surowitz In Sup. Of Plaintiffs' App. For Default Judgment      Case No. 08 CV-00498-LJO-JLT



NECA

NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION



2007-2010

Covering **INSIDE** Electrical Construction Work

In Kern County, California

BETWEEN

LOCAL UNION NO. 428

OF THE

INTERNATIONAL BROTHERHOOD OF

ELECTRICAL WORKERS

AND

KERN COUNTY CHAPTER

NATIONAL ELECTRICAL CONTRACTORS

ASSOCIATION

N.E.C.A.
3008 Sillect Avenue, Suite 103, Bakersfield, CA 93308
Phone: (661) 325-5937

I.B.E.W.
911 - 20th Street, Bakersfield, CA 93301
Phone: (661) 323-2979

(INCLUDES CATEGORY I LANGUAGE)

EXHIBIT A                                                              5

|  | SECTION | PAGE |
|---|---|---|
| AFL-CIO | 3.02 | 9 |
| ALTERATION | 3.14 | 12 |
| AMF | 6.06 | 28 |
| ANNULMENT - SUBCONTRACTING | 2.25 | 6 |
| APPEALS | 4.16 | 22 |
| APPRENTICE TO JOURNEYMAN RATIO | 5.12 | 25 |
| ARBITRATION | 1.09 | 2 |
| BOND | 6.05 | 27 |
| C.I.R. | 1.08 | 2 |
| CABLE SPLICING | 3.18 | 13 |
| CHAIRMAN & SECRETARY | 5.02 | 23 |
| CHANGES AND TERMINATION | 1.02 | 1 |
| CODE OF EXCELLENCE | 12.01 | 32 |
| DEFINITIONS |  | 21 |
| DISPUTES | 1.04 | 2 |
| EFFECTIVE DATE | 1.01 | 1 |
| EMPLOYER | 2.03 | 3 |
| EXAMINATIONS | 4.10 | 21 |
| FAVORED NATIONS | 2.31 | 6 |
| FOREMAN | 3.19 | 13 |
| FREE ZONE | 3.29 | 15 |
| FRINGE BENEFITS |  | 26 |
| GENERAL FOREMAN | 3.21 | 13 |
| GRIEVANCES | 1.04 | 2 |
| HAULING & HANDLING MATERIAL | 3.10 | 11 |
| HAZARD PAY | 3.12 | 11 |
| HOLIDAYS | 3.07 | 10 |
| JATC | 5.01 | 23 |
| LABOR DAY | 3.08 | 10 |
| LABOR-MANAGEMENT COM. | 1.05 | 2 |
| LMCC | 8.01 | 29 |
| LUNCH & REST PERIODS | 3.06 | 9 |
| MANAGEMENT RIGHTS | 2.01 | 3 |
| MUTUAL CONSENT | 1.03 | 2 |
| N.E.B.F. | 6.01 | 26 |
| NEIF | 7.01 | 28 |
| NLMCC | 9.01 | 30 |
| NON-RESIDENT EMPLOYEES-PORTABILITY | 2.13 | 4 |
| NORMAL CONST. LAB. MARKET | 4.08 | 21 |
| OUT OF WORK LIST | 4.11 | 22 |

EXHIBIT A

6

|  | SECTION | PAGE |
|---|---|---|
| OVERTIME | 3.09 | 10 |
| OWNER MAINTENANCE | 3.15 | 12 |
| PAY DAY | 3.23 | 13 |
| POLICY | 2.39 | 8 |
| PORTABILITY | 2.13 | 4 |
| QUORUM | 1.07 | 2 |
| REFERRAL PROCEDURE |  | 20 |
| REPORTING TIME | 3.03 | 9 |
| RESIDENT | 4.09 | 21 |
| SCOPE OF WORK | 3.16 | 12 |
| SECURING CLEARANCES | 3.05 | 9 |
| SEPARABILITY & SAVINGS CLAUSE |  | 32 |
| SHIFT WORK | 3.13 | 11 |
| SHOW UP PAY | 3.28 | 15 |
| SIGNS ON VEHICLES | 2.24 | 6 |
| STEWARDS | 2.37 | 7 |
| STRIKE, WORK STOPPAGE | 2.40 | 8 |
| SUBSISTENCE | 3.30 | 16 |
| SUBSTANCE ABUSE | 11.01 | 31 |
| SUPERVISION OF AN APPRENTICE | 5.13 | 25 |
| TIME CLOCKS | 3.04 | 9 |
| TOOL LIST | 2.16 | 5 |
| TOOL STORAGE - BREAKAGE | 2.21 | 5 |
| TRAINING DIRECTOR | 5.05 | 24 |
| TRAVEL TIME | 3.31 | 17 |
| TROUBLE CALLS | 3.11 | 11 |
| TRUST CONTRIBUTIONS | 6.02 | 27 |
| UN-INDENTURED | 5.10 | 2 |
| UNION ACCESS | 2.36 | 7 |
| UNION SECURITY | 2.33 | 7 |
| VOTING | 1.07 | 2 |
| WAGES RATES | 3.35 | 18 |
| WELDERS | 2.14 | 5 |
| WORK PRESERVATION | 2.42 | 8 |
| WORK WEEK | 3.01 | 9 |
| WORKING DUES CHECK-OFF | 2.34 | 7 |
| WORKING MEMBER OF FIRM | 2.09 | 4 |

EXHIBIT A

## AGREEMENT

Agreement by and between the Kern County Chapter of the National Electrical Contractors Association (NECA) and Local Union 428, IBEW.

It shall apply to all firms who sign a Letter of Assent to be bound by the terms of this Agreement.

As used hereinafter in this Agreement, the term "Chapter" shall mean the Kern County Chapter N.E.C.A., Inc. and the term "Union" shall mean Local Union 428, I.B.E.W.

The term "Employer" shall mean an individual firm who has been recognized by an assent to this Agreement.

## BASIC PRINCIPLES

The Employer and the Union have a common and sympathetic interest in the Electrical Industry. Therefore, a working system and harmonious relations are necessary to improve the relationship between the Employer, the Union and the Public. Progress in Industry demands a mutuality of confidence between the Employer and the Union. All will benefit by continuous peace and by adjusting any differences by rational, common sense methods. In accordance with Federal Government Executive Orders, the Fair Employment Practices Act of the State of California, and other applicable laws, the parties to this Agreement are obligated not to discriminate against any employees, or applicants for employment, because of race, sex, age, creed, color or national origin. Now, therefore, in consideration of the mutual promises and agreements herein contained, the parties hereto agree as follows:

## ARTICLE I

### EFFECTIVE DATE – CHANGES – TERM OF AGREEMENT

Sec. I.01. EFFECTIVE DATE: This Agreement shall take effect December 1, 2007, and shall remain in effect until November 30, 2010, unless otherwise specifically provided for herein. It shall continue in effect from year to year thereafter, from December 1 through November 30 of each year, unless changed or terminated in the way later provided herein.

Sec. I.02. CHANGES AND TERMINATION:

(a) Either party or an Employer withdrawing representation from the Chapter or not represented by the Chapter, desiring to change or terminate this Agreement must provide written notification at least 90 days prior to the expiration date of the Agreement or any anniversary date occurring thereafter.

(b) Whenever notice is given for changes, the nature of the changes desired must be specified in the notice, or no later than the first negotiating meeting unless mutually agreed otherwise.

(c) The existing provisions of the Agreement, including this Article, shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

EXHIBIT A                                    8

hand tools if it is proved that such loss or breakage is due to egregious negligence.

**Sec. 2.22.** Employees will not be required to ride in, or on truck beds, or similar arrangements except in trucks with suitable seating arrangements, which are safe from loose tools or material. Other transportation also shall be safe from loose tools and materials.

**Sec. 2.23.** Vehicles transporting workers shall not be driven in violation of the State Vehicle Code and/or Highway laws.

**Sec. 2.24. SIGNS ON VEHICLES:** Company vehicles used by workers employed under the terms of this Agreement shall have visible on each side, permanent signs, seals, decals or stickers not less than thirty-six (36) square inches in area.

**Sec. 2.25. ANNULMENT - SUBCONTRACTING:** The Local Union is a part of the International Brotherhood of Electrical Workers and any violation or annulment by an individual Employer of the approved Agreement of this or any other Local Union of the IBEW, other than violations of Paragraph 2 of this Section, will be sufficient cause for the cancellation of his Agreement by the Local Union after a finding has been made by the International President of the Union that such a violation or annulment has occurred.

The subletting, assigning or transfer by an individual Employer of any work in connection with electrical work to any person, firm or corporation not recognizing the I.B.E.W. or one of its Local Unions as the collective bargaining representative of his employees on any electrical work in the jurisdiction of this or any other Local Union to be performed at the site of the construction, alteration, painting, or repair of a building, structure or other work, will be deemed a material breach of this Agreement.

All charges of violations of Paragraph 2 of this Section shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

**Sec. 2.26.** No Employer shall contract with employees any part of the labor services required by any work governed by this Agreement.

**Sec. 2.27.** No Employer shall sublet or contract to another Employer for the purpose of eliminating travel pay or subsistence.

**Sec. 2.28.** The Employer shall not loan workers in his employ to any other Employer.

**Sec. 2.29.** No Employer or worker employed under the terms of this Agreement shall give or accept directly or indirectly any rebate of wages. An Employer found violating this provision shall be subject to having this Agreement terminated upon written notice thereof being given by the Union.

**Sec. 2.30.** The Union reserves the right to discipline its members for violation of its laws, rules and agreements.

**Sec. 2.31. FAVORED NATIONS:** The Union agrees that if, during the life of this Agreement, it

EXHIBIT A                                                                                      9

Case 1:08-cv-00498-LJO-JLT   Document 64-3   Filed 04/27/12   Page 10 of 228

is laid off due to a reduction in force. Any Employer desiring to discharge a Steward shall notify the Union prior to taking such action.

**Sec.2.38.** The Union Representative may check weekly payroll checks.

**Sec.2.39.  POLICY:** The policies of the parties to this Agreement include the recognition of the obligation to the public for maximum quality and basic economy; the continuance of the intellectual and material advancement of the Electrical Construction Industry of Kern County, through improved Apprentice, Journeyman, and Employer work shops and study courses, and by other means; and the use of materials, fixtures and equipment manufactured, processed or repaired under economically sound wage, hour, and working conditions specified in the I.B.E.W. Collective Bargaining Agreements.

**Sec.2.40.  STRIKE, WORK STOPPAGE:** The Union will take every reasonable means within their power to induce employees engaged in a strike, work stoppage, or slowdown in violation of this Agreement to return to work; but the Union, their officers or representatives shall not be held responsible for any strike, work stoppage, or slowdown which, the Union, their officers or representatives shall have expressly forbidden or declared in violation thereof.

**Sec.2.41.  WORKMANSHIP:**

(a) Workers shall install all electrical work in a safe and workmanlike manner and in accordance with applicable code and contract specifications.

(b) The Employer may require the Journeyman to make corrections on improper workmanship for which the employee is responsible, on the employee's own time and during regular working hours, unless errors were made by orders of the Employer, or the Employer's representative.

(c) When an Employer or his representative instructs a worker to install or perform work in violation of the prevailing Electrical Codes, the worker shall so notify the Union office immediately.

**Sec.2.42.  WORK PRESERVATION:**

(a) In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any on-site construction work of the type covered by this Agreement, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity including a joint venture, wherein the Employer, through its officers, directors, partners, or stockholders, exercises either directly or indirectly, management control or majority ownership, the terms and conditions of this Agreement shall be applicable to all such work. All charges or violations of this Section shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

(b) As a remedy for violations of this Section, the Labor-Management Committee, the

EXHIBIT A                                                                    10

Council on Industrial Relations for the Electrical Contracting Industry, and/or an independen arbitrator, as the case may be, are empowered, in their discretion and at the request of the Union, t require an Employer to (1) pay to affected employees covered by this Agreement, including registere applicants for employment, the equivalent of wages lost by such employees as a result of th violations; and (2) pay into the affected joint trust funds established under this Agreement an delinquent contributions to such funds which have resulted from the violations. Provision for thi remedy herein does not make such remedy the exclusive remedy available to the Union for violatio of this Section nor does it make the same or other remedies unavailable to the Union for violations o other Sections or other Articles of this Agreement.

(c) If, as a result of violations of this Section, it is necessary for the Union and/or th Trustees of the joint trust funds to institute court action to enforce an award rendered in accordanc with subsection (b) above, or to defend an action which seeks to vacate such award, the Employer shal pay any accountants' and attorneys' fees incurred by the Union and/or Fund Trustees, plus cost of th litigation, which have resulted from the bringing of such court action.

### ARTICLE III

### HOURS - WAGES - WORKING CONDITIONS

**Sec. 3.01. WORK DAY - WORK WEEK:** Eight (8) hours between the hours of 6:00 AM an 6:00 PM shall constitute a workday. Forty (40) hours within five (5) days: Monday throug Friday inclusive shall constitute the workweek. Starting time shall be established for at least five (5 consecutive days in duration. Variations of starting time shall not be used as a means to circumven overtime pay.

**Sec. 3.02. AFL-CIO:** If two or more Kern County AFL-CIO crafts adopt a shorter work da or work week during the term of this Agreement, then either party may open the Agreement, o the annual opening date for negotiations for shorter work day and/or week.

**Sec. 3.03. REPORTING TIME:** An Employee shall not report to a job site earlier than fifteer (15) minutes before starting time, and shall leave at quitting time.

**Sec. 3.04. TIME CLOCKS:** When time clocks are required by the customer or the Employer employees shall punch such time clocks on the Employer's time.

**Sec. 3.05. SECURING CLEARANCES:** All job processing, or security and automobil clearance, shall be obtained and performed on the Employer's time as time worked, unless th employee was informed of such requirements and failed to meet them.

**Sec. 3.06. LUNCH AND REST PERIODS:**

(a) A lunch break of one half (1/2) hour shall be established between the hours o 10:00 AM and 2:00 PM for the purpose of uniformity on the job or workplace. Subsequent lunc breaks will be taken in proportion to the employee's starting time and the first or established lunch break. The first lunch break shall be on the employee's time.

(b) Employees required to work through the first lunch period shall be paid at th

EXHIBIT A                    11

Signed for the Association:

KERN COUNTY CHAPTER
NATIONAL ELECTRICAL
CONTRACTORS ASSOCIATION, INC.

Reed Adamson
President

James A. Chilko
Chapter Manager

APR 16 2009

Date

Signed for the Union:

LOCAL UNION #428
INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS

James S. Elrod
President

Danny Kane
Business Manager

04-16-09

Date

APPROVED
INTERNATIONAL OFFICE-I.B.E.W.

MAY 11 2009

EXHIBIT A                                                    12

ALPHA OMEGA ELECTRIC

July 6, 2000 to December 31, 2007

<u>COMMENTS</u>

The following comments are an integral part of this report.   They will assist in understanding the attached Schedules as well as the procedures utilized in arriving at the total amount due:

**Schedule A.** Schedule Of Subcontracting – **Cash Disbursements**
This Schedule relates to hours and wages under-reported due to not reporting subcontracted work to Doug Kennedy, who performed covered work for the company.   Totals are transferred to the Statement Of Amount Due.  See the attached Schedule for additional information.

**Schedule B.**  Schedule Of Hours and Wages Under-Reported – **Technology Distribution Company Omissions**
This Schedule reflects hours under-reported relative to employees who performed covered work and were not reported to the Trust Fund during the period examined.   Totals are transferred to the Statement Of Amount Due.

**Schedule C.**  Schedule Of Hours and Wages Under-Reported – **Alpha Omega Electric Omissions**
This Schedule reflects hours under-reported relative to employees who performed covered work and were not reported to the Trust Fund during the period examined.   Totals are transferred to the Statement Of Amount Due.

**Statement Of Amount Due**
The totals from the Schedules are transferred to this Statement.   It summarizes the amount due each Fund, accounts for liquidated damages and arrives at the total amount due segregated by Schedule.

EXHIBIT B                                         13

ALPHA OMEGA ELECTRIC
STATEMENT OF AMOUNT DUE
JULY 6, 2000 TO DECEMBER 31, 2007

PAGE 1 OF 4

| SCHEDULE | TOTAL UNDER-REPORTED | RATE | SCHEDULE A SUBCONTR.-CD JOURNEYMAN | SCHEDULE B TDC OMISSIONS JOURNEYMAN | SCHEDULE C AOE OMISSIONS JOURNEYMAN | TOTAL AMOUNT DUE |
|---|---|---|---|---|---|---|
| **PENSION** | | | | | | |
| A 8/04-10/04 | 277.39 | $4.05 | $ 1,123.43 | $ 696.60 | $ 12,956.48 | |
| B 6/04-11/04 | 172.00 | 4.05 | | 3,892.05 | 25,571.70 | |
| B 12/04-5/05 | 961.00 | 4.05 | | 7,015.61 | 20,910.00 | |
| B 6/05-11/05 | 1,732.25 | 4.05 | | 11,320.56 | | |
| B 12/05-5/06 | 2,358.45 | 4.80 | | | | |
| B 6/06-11/06 | 1,115.50 | 5.55 | | 6,191.03 | | |
| C 6/06-11/06 | 2,334.50 | 5.55 | | | | |
| C 12/06-5/07 | 4,158.00 | 6.15 | | | | |
| C 6/07-12/07 | 3,400.00 | 6.15 | | | | |
| TOTAL: PENSION | | | $ 1,123.43 | $ 29,115.85 | $ 59,438.18 | $ 89,677.46 |
| | | | | | | |
| **H & W** | | | | | | |
| A 8/04-10/04 | 277.39 | $ 5.20 | $ 1,442.43 | $ 894.40 | $ 15,501.08 | |
| B 6/04-11/04 | 172.00 | 5.20 | | 5,766.00 | 27,609.12 | |
| B 12/04-5/05 | 961.00 | 6.00 | | 11,502.14 | 22,406.00 | |
| B 6/05-11/05 | 1,732.25 | 6.00 | | 15,660.11 | | |
| B 12/05-5/06 | 2,358.45 | 6.64 | | 7,406.92 | | |
| B 6/06-11/06 | 1,115.50 | 6.64 | | | | |
| C 6/06-11/06 | 2,334.50 | 6.64 | | | | |
| C 12/06-5/07 | 4,158.00 | 6.64 | | | | |
| C 6/07-12/07 | 3,400.00 | 6.59 | | | | |
| TOTAL: H&W | | | $ 1,442.43 | $ 41,229.57 | $ 65,516.20 | $ 108,188.20 |
| | | | | | | |
| SUB-TOTALS FORWARD... | | | $ 2,565.86 | $ 70,345.42 | $ 124,954.38 | $ 197,865.66 |

EXHIBIT B

14

ALPHA OMEGA ELECTRIC
STATEMENT OF AMOUNT DUE
JULY 6, 2000 TO DECEMBER 31, 2007

PAGE 2 OF 4

| SCHEDULE | TOTAL UNDER-REPORTED | RATE | SCHEDULE A SUBCONTR.-CD JOURNEYMAN | SCHEDULE B TDC OMISSIONS JOURNEYMAN | SCHEDULE C AOE OMISSIONS JOURNEYMAN | TOTAL AMOUNT DUE |
|---|---|---|---|---|---|---|
| | | | | | AMOUNT DUE | |
| FORWARDED... | | | $ 2,565.86 | $ 70,345.42 | $ 124,954.38 | $ 197,865.66 |
| **APPR.** | | | | | | |
| A 8/04-10/04 | 8,000.00 | 2.80% | $ 224.00 | 96.32 | $ 1,867.60 | |
| B 6/04-11/04 | 3,440.00 | 2.80% | | 768.80 | 3,326.40 | |
| B 12/04-5/05 | 961.00 | $0.80 | | 1,385.80 | | |
| B 6/05-11/05 | 1,732.25 | 0.80 | | 1,886.76 | | |
| B 12/05-5/06 | 2,358.45 | 0.80 | | 892.40 | | |
| B 6/06-11/06 | 1,115.50 | 0.80 | | | | |
| C 6/06-11/06 | 2,334.50 | 0.80 | | | | |
| C 12/06-5/07 | 4,158.00 | 0.80 | | | 2,720.00 | |
| C 6/07-12/07 | 3,400.00 | 0.80 | | | | |
| TOTAL: APPR. | | | $ 224.00 | $ 5,030.08 | $ 7,914.00 | 13,168.08 |
| **NEBF** | | | | | | |
| A 8/04-10/04 | 8,000.00 | 3.00% | $ 240.00 | 103.20 | $ 1,162.94 | |
| B 6/04-11/04 | 3,440.00 | 3.00% | | 402.68 | 2,187.86 | |
| B 12/04-5/05 | 13,422.50 | 3.00% | | 738.71 | 1,862.73 | |
| B 6/05-11/05 | 24,623.75 | 3.00% | | 1,098.94 | | |
| B 12/05-5/06 | 36,631.40 | 3.00% | | 506.55 | | |
| B 6/06-11/06 | 16,885.00 | 3.00% | | | | |
| C 6/06-11/06 | 38,764.75 | 3.00% | | | | |
| C 12/06-5/07 | 72,928.50 | 3.00% | | | | |
| C 6/07-12/07 | 62,091.00 | 3.00% | | | | |
| TOTAL: NEBF | | | $ 240.00 | $ 2,850.08 | $ 5,213.53 | 8,303.61 |
| SUB-TOTALS FORWARD... | | | $ 3,029.86 | $ 78,225.58 | $ 138,081.91 | $ 219,337.35 |

EXHIBIT B

15

ALPHA OMEGA ELECTRIC
STATEMENT OF AMOUNT DUE
JULY 6, 2000 TO DECEMBER 31, 2007

PAGE 3 OF 4

AMOUNT DUE

| SCHEDULE | TOTAL UNDER-REPORTED | RATE | SCHEDULE A SUBCONTR.-CD JOURNEYMAN | SCHEDULE B TDC OMISSIONS JOURNEYMAN | SCHEDULE C AOE OMISSIONS JOURNEYMAN | TOTAL AMOUNT DUE |
|---|---|---|---|---|---|---|
| FORWARDED... | | | $ 3,029.86 | $ 78,225.58 | $ 138,081.91 | $ 219,337.35 |
| **AMF** | | | | | | |
| A 8/04-10/04 | 8,000.00 | 1.50% | $ 120.00 | $ | $ | |
| B 6/04-11/04 | 3,440.00 | 1.50% | | 51.60 | | |
| B 12/04-5/05 | 13,422.50 | 1.50% | | 201.34 | | |
| B 6/05-11/05 | 24,623.75 | 1.50% | | 369.36 | | |
| B 12/05-5/06 | 36,631.40 | 1.50% | | 549.47 | | |
| B 6/06-11/06 | 16,885.00 | 1.50% | | 253.28 | | |
| C 6/06-11/06 | 38,764.75 | 1.50% | | | 581.47 | |
| C 12/06-5/07 | 72,928.50 | 1.50% | | | 1,093.93 | |
| C 6/07-12/07 | 62,091.00 | 1.50% | | | 931.37 | |
| TOTAL: AMF | | | $ 120.00 | $ 1,425.05 | $ 2,606.77 | 4,151.82 |
| **NIMCC** | | | | | | |
| A 8/04-10/04 | 277.39 | $0.01 | $ 2.77 | $ | $ | |
| B 6/04-11/04 | 172.00 | 0.01 | | 1.72 | | |
| B 12/04-5/05 | 961.00 | 0.01 | | 9.61 | | |
| B 6/05-11/05 | 1,732.25 | 0.01 | | 17.32 | | |
| B 12/05-5/06 | 2,358.45 | 0.01 | | 23.58 | | |
| B 6/06-11/06 | 1,115.50 | 0.01 | | 11.16 | | |
| C 6/06-11/06 | 2,334.50 | 0.01 | | | 23.35 | |
| C 12/06-5/07 | 4,158.00 | 0.01 | | | 41.58 | |
| C 6/07-12/07 | 3,400.00 | 0.01 | | | 34.00 | |
| TOTAL: NIMCC | | | $ 2.77 | $ 63.39 | $ 98.93 | 165.09 |
| SUB-TOTALS FORWARD... | | | $ 3,152.63 | $ 79,714.02 | $ 140,787.61 | $ 223,654.26 |

EXHIBIT B

16

ALPHA OMEGA ELECTRIC
STATEMENT OF AMOUNT DUE
JULY 6, 2000 TO DECEMBER 31, 2007

PAGE 4 OF 4

| SCHEDULE | TOTAL UNDER-REPORTED | RATE | AMOUNT DUE SCHEDULE A SUBCONTR. CD JOURNEYMAN | SCHEDULE B TDC OMISSIONS JOURNEYMAN | SCHEDULE C AOE OMISSIONS JOURNEYMAN | TOTAL AMOUNT DUE |
|---|---|---|---|---|---|---|
| **DUES** | | | | | | |
| FORWARDED: | | | $ 3,152.63 | $ 79,714.02 | $ 140,787.61 | $ 223,654.26 |
| A 8/04-10/04 | 8,000.00 | 6.00% | $ 480.00 | $ 206.40 | | |
| B 6/04-11/04 | 3,440.00 | 6.00% | | 805.35 | | |
| B 12/04-5/05 | 13,422.50 | 6.00% | | 1,477.43 | | |
| B 6/05-11/05 | 24,623.75 | 6.00% | | 2,197.88 | | |
| B 12/05-5/06 | 36,631.40 | 6.00% | | 1,013.10 | | |
| B 6/06-11/06 | 16,885.00 | 6.00% | | | $ 2,325.89 | |
| C 6/06-11/06 | 38,764.75 | 6.00% | | | 4,375.71 | |
| C 12/06-5/07 | 72,928.50 | 6.00% | | | 3,725.46 | |
| C 6/07-12/07 | 62,091.00 | 6.00% | | | | |
| **TOTAL: DUES** | | | $ 480.00 | $ 5,700.16 | $ 10,427.06 | 16,607.22 |
| **TOTAL CONTRIBUTIONS DUE** | | | $ 3,632.63 | $ 85,414.18 | $ 151,214.67 | $ 240,261.48 |
| **LIQUIDATED DAMAGES - 10%** | | | 363.26 | 8,541.42 | 15,121.47 | 24,026.15 |
| **TOTAL AMOUNT DUE** | | | $ 3,995.89 | $ 93,955.60 | $ 166,336.14 | $ 264,287.63 |

SEE COMMENTS

EXHIBIT B

17

SCHEDULE OF SUBCONTRACTING - **CASH DISBURSEMENTS**
JULY 6, 2000 TO DECEMBER 31, 2007

**Doug Kennedy**
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

| | GROSS AMOUNT PAID | CBA JNY. WAGE RATE | HOURS UNDER-REPORTED |
|---|---|---|---|
| PERIOD: 8/04-10/04 | | | |
| 8/6/2004 | $ 1,600.00 | $   28.84 | 55.48 |
| 9/3/2004 | 1,600.00 | 28.84 | 55.48 |
| 9/16/2004 | 1,600.00 | 28.84 | 55.48 |
| 10/1/2004 | 1,600.00 | 28.84 | 55.48 |
| 10/15/2004 | 1,600.00 | 28.84 | 55.48 |
| TOTAL UNDER-REPORTED PERIOD: 8/04-10/04 | $ 8,000.00 | | 277.39 |

NOTE:  HOURS UNDER-REPORTED ARE CALCULATED AS FOLLOWS:

   (GROSS AMOUNT PAID) / (CBA JNY. WAGE RATE) = (HOURS UNDER-REPORTED)

   TRANSFER TOTALS TO STATEMENT OF AMOUNT DUE

      SEE COMMENTS

EXHIBIT B                                   18

ALPHA OMEGA ELECTRIC
SCHEDULE OF HOURS AND WAGES UNDER-REPORTED - TECHNOLOGY DISTRIBUTION COMPANY OMISSIONS
JULY 6, 2000 TO DECEMBER 31, 2007

SCHEDULE B

| JOURNEYMAN WR=WAGE RATE | 6/04-11/04 | 12/04-5/05 | 6/05-11/05 | 12/05-5/06 | 6/06-11/06 | TOTAL UNDER-REPORTED |
|---|---|---|---|---|---|---|
| Maggard, Jacob 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 | 172.00 $ 3,440.00 WR-$20.00 | 161.50 $ 3,245.00 WR-$20.00 | | | | 333.50 $ 6,685.00 |
| Quintero, Daniel 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 | | 389.50 $ 5,257.50 WR-$15.00 | 285.75 $ 4,286.25 WR-$15.00 | 72.00 $ 1,080.00 WR-$15.00 | 289.00 $ 4,335.00 WR-$15.00 | 1,036.25 $14,958.75 |
| Pineda, Merlin 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 | | 410.00 $ 4,920.00 WR-$12.00 | 969.50 $12,335.00 WR-$14.00 | 996.00 $14,968.00 WR-$16.00 | 398.00 $ 6,368.00 WR-$16.00 | 2,773.50 $38,591.00 |
| Lee, Gregory II 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 | | | 75.50 $ 1,177.00 WR-$14.00 | | | 75.50 $ 1,177.00 |
| Wilson, Robert 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 | | | 401.50 $ 6,825.50 WR-$17.00 | 832.95 $14,164.40 WR-$17.00 | 61.00 $ 1,037.00 WR-$17.00 | 1,295.45 $22,026.90 |
| Lamb, Nathan 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 Wage Rate-$14.00 | | | | 457.50 $ 6,419.00 WR-$14.00 | 367.50 $ 5,145.00 WR-$14.00 | 825.00 $11,564.00 |
| TOTAL UNDER-REPORTED: HOURS WAGES | 172.00 $ 3,440.00 | 961.00 $13,422.50 | 1,732.25 $24,623.75 | 2,358.45 $36,631.40 | 1,115.50 $16,885.00 | 6,339.20 $95,002.65 |

TRANSFER TOTALS TO STATEMENT OF AMOUNT DUE

EXHIBIT B

ALPHA OMEGA ELECTRIC
SCHEDULE OF HOURS AND WAGES UNDER-REPORTED - ALPHA OMEGA ELECTRIC OMISSIONS
JULY 6, 2000 TO DECEMBER 31, 2007

SCHEDULE C

| JOURNEYMAN WR=WAGE RATE | 6/06-11/06 | 12/06-5/07 | 6/07-12/07 | TOTAL UNDER-REPORTED |
|---|---|---|---|---|
| Hooker, Bryan 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 | 579.00 $ 9,007.25 WR-$16.00 | 644.50 $11,637.00 WR-$18.00 | 902.00 $16,623.00 WR-$18.00 | 1,223.50 $ 20,644.25 |
| Lamb, Nathan 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 | 639.50 $10,544.00 WR-$16.00 | 882.50 $16,159.50 WR-$18.00 | | 2,424.00 $ 43,326.50 |
| Pineda, Merlin 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 | 647.00 $12,096.00 WR-$18.00 | 1,030.50 $18,900.00 WR-$18.00 | 450.50 $ 8,924.00 WR-$23.00 | 2,128.00 $ 39,920.00 |
| Quintero, Daniel 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 | 469.00 $ 7,117.50 WR-$15.00 | 432.00 $ 6,495.00 WR-$15.00 | | 901.00 $ 13,612.50 |
| Arredondo, Salvador 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 | | 587.00 $11,820.00 WR-$20.00 | 929.00 $18,765.00 WR-$20.00 | 1,516.00 $ 30,585.00 |
| Rendon, Derrik 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 | | 581.50 $ 7,917.00 WR-$14.00 | 1,118.50 $17,779.00 WR-$16.00 | 1,700.00 $ 25,696.00 |
| TOTAL UNDER-REPORTED: HOURS | 2,334.50 | 4,158.00 | 3,400.00 | 9,892.50 |
| WAGES | $38,764.75 | $72,928.50 | $62,091.00 | $ 173,784.25 |

TRANSFER TOTALS TO STATEMENT OF AMOUNT DUE

EXHIBIT B

20

MICHAEL SCHWARTZ
COMPLIANCE VERIFICATION, INC.
28026 DRY WELL CIRCLE
CASTAIC, CA 91384
TEL(661) 702-0343
FAX(661) 702-0403

January 2, 2009

Board of Trustees
Kern County Electrical Trust Funds
3008 Sillect Avenue, Suite 100
Bakersfield, California 93308

### STATEMENT

For professional services rendered relative to the following:

```
Alpha Omega Electric
    Senior Auditor       (13 3/4 hrs. @ $65.00)   $   893.75
    Senior Auditor       (14     hrs. @ $75.00)     1,050.00
    Office Administrator  ( 5 1/4 hrs  @ $50.00)       262.50
    Driving Expense                                     87.17
```

**Total amount due for professional services
rendered.**                                    **$2,293.42**

Services included:

Work performed conducting a compliance examination and preparing a corresponding Compliance Verification Report.

**Effective October 1, 2008,** our Senior Auditor fees for conducting compliance examinations had increased to $75.00.

EXHIBIT C                                                    21

4ee4

MICHAEL SUROWITZ
COMPLIANCE VERIFICATION, INC.
28026 DRY WELL CIRCLE
CASTAIC, CA 91384
TEL(661) 702-0343
FAX(661) 702-0403

March 3, 2009

Board of Trustees
Kern County Electrical Trust Funds
3008 Sillect Avenue, Suite 100
Bakersfield, California 93308

<u>STATEMENT</u>

For professional services rendered relative to the following:

Alpha Omega Electric – **Meeting with Attorney**
   **Senior Auditor**    **( 5 1/4 hrs. @ $75.00)**  $  393.75
   Office Administrator (  1/2 hrs @ $50.00)    25.00
   Driving Expense                   77.55
        Sub-Total                 $  496.30

Covenant Services, Inc. – **Unable to Obtain Appointment**
   Senior Auditor    ( 3 3/4 hrs. @ $65.00)  $  243.75
   Senior Auditor    ( 1   hrs. @ $75.00)    75.00
   Office Administrator ( 5   hrs @ $50.00)   250.00
        Sub-Total                 $  568.75

<u>**Total amount due for professional services
rendered.**</u>                      **$1,065.05**

**Effective October 1, 2008,** our Senior Auditor fees for conducting compliance examinations had increased to $75.00.

EXHIBIT C                        22