**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BOARD OF TRUSTEES OF THE KERN COUNTY ELECTRICAL PENSION FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHRISTOPHER BURGONI, et al.,<br><br>Defendants. | Case No.: 1:08-cv-0498 – LJO JLT<br><br>**FINDINGS AND RECOMMENDATION GRANTING APPLICATION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>(Doc. 64) |

The Board of Trustees of the Kern County Electrical Pension Fund, Board of Trustees of the Kern County Electrical Workers Health & Welfare Trust and Board of Trustees of the Kern Court Electrical Journeyman and Apprentice Training Trust ("Plaintiffs") seek entry of default judgment against defendants Christopher Burgoni ("Burgoni") and Tadoc Enterprises ("Tadoc").[1] (Doc. 64). The Court reviewed Plaintiffs' motion and supporting documents and took the matter under submission on May 30, 2012. For the following reasons, the Court recommends that Plaintiffs' motion for entry of default judgment be **GRANTED**.

/////

[1] Plaintiffs' initial complaint and First Amended Complaint also named Defendant Fulce Enterprises; however, Plaintiffs moved to dismiss defendant Fulce with prejudice on April 27, 2012. (Doc. 63). The Court issued the order dismissing defendant Fulce on April 30. 2012. (Doc. 67).

**I. Procedural History**

Plaintiffs are joint labor-management trust funds created pursuant to Section 302(c) of the Labor Management Relations Act, 29 U.S.C. § 186(c) and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq. (Doc. 36 at 2). Defendant Burgoni (doing business as Alpha Omega) was a licensed contractor. Defendant Tadoc is a California corporation that has been doing business as Alpha Omega since 2006. (Id.) Defendants Burgoni and Tadoc are collectively referred to herein as "Alpha Omega."

On April 10, 2008, Plaintiffs filed a complaint for accounting and breach of contract against defendants. (Doc. 1). The parties filed a stipulation to extend defendants time to respond to the complaint to May 28, 2010. (Doc. 8). Defendants filed their answer on May 27, 2008. (Doc. 9). The matter was referred to the voluntary dispute resolution program for early neutral evaluation on July 9, 2008. (Doc. 12).

On September 5, 2008, pursuant to a stipulation from the parties, the Court ordered the matter stayed until November 30, 2008 with the following provisions: 1) the Parties will seek to have a Settlement Status Conference set approximately four (4) months from the date the parties sign the stipulation; 2) the Plaintiffs may conduct an audit of ALPHA OMEGA, TADOC and FULCE ENTERPRISES, INC. ("FULCE") for the purpose of determining alleged obligations to pay contributions on electrician hours worked as covered by the applicable Collective Bargaining Agreement; 3) the Audit shall occur within 30 days of the Parties signing the stipulation; 4) the Audit shall cover the time period beginning when ALPHA OMEGA became covered by the Collective Bargaining Agreement with the IBEW through 12/31/07; 5) Plaintiffs waive any claim for liquidated damages retroactively prior to 8/26/08; and 6) Plaintiffs do not waive the claim for interest.

On June 9, 2010, the parties stipulated to allow Plaintiffs to file an amended complaint. (Doc. 33). The Court granted the parties request. (Doc. 34). Plaintiffs filed their First Amended Complaint ("FAC") on June 16, 2010. (Doc. 36). Defendants filed their Answer to the FAC on July 22, 2010. (Doc. 38).

Counsel for defendants sought to withdraw as attorney of record on May 16, 2011. (Doc. 40). The Court granted counsel's request for leave to withdraw on July 6, 2011. (Doc. 46). On September 29, 2011, withdrawn counsel served Defendants notice of the Court's order granting the requested withdrawal. (Docs. 49-50). In the meantime, on September 14, 2011, the Court issued its Order of Reassignment, in which the Court informed the parties that the assignment of the action to Senior U.S. District Judge Wanger was withdrawn. (Doc. 47). The parties were ordered "to affirmatively indicate whether they consent to or decline the consent of the U.S. Magistrate Judge pursuant to 28 USC § 636 (c). The parties were to file the form attached to the order, indicating their consent or decline no later than October 14, 2011. (Doc. 47). Defendants failed to comply with the Court's Order.

On October 6, 2011, the Court ordered the corporate defendants to have their replacement counsel enter an appearance within 21 days. (Doc. 51). No appearance was entered on behalf of any corporate defendant. Also on October 18, 2011, the Court issued an order to all of the defendants to show cause why their respective answers should not be stricken based upon their failure to file the form indicating whether they consented to Magistrate Judge jurisdiction. (Doc. 53). When the parties failed to respond, the Court issued Findings and Recommendations to strike defendants answers, enter default, and assign a District Court Judge to the matter. (Doc. 55).

The order adopting the Magistrate Judge's findings and recommendations was issued on December 21, 2011. (Doc. 60). The Clerk's Entry of Default was issued the same day in accordance with the District Judge's order. (Doc. 61). Plaintiffs filed their motion for default judgment on April 27, 2012.

Alpha Omega was served with Plaintiffs motion by mail (Doc. 64 at 5), but has failed to respond or otherwise communicate with the court. Defendants are not infants or incompetent persons, and are not in the military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940.

**II. Legal Standards for Default Judgment**

When default was entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed.R.Civ.P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations

regarding liability are taken as true, but allegations regarding the amount of damages must be proven. Pope v. United States, 323 U.S. 1, 22 (1944); *see also* Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of North Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Granting or denying a motion for default judgment is within the discretion of the Court. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. Pepsico, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), accord Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit opined,

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. Id. at 1472.

**III. Plaintiffs' First Amended Complaint**

Plaintiffs' FAC alleges a violation of the Employee Retirement Income Security Act of 1974 ("ERISA") (29 U.S.C. § 1145), seeks an accounting, and alleges state claims for breach of contract and fraud. (Doc. 36). Specifically, Plaintiffs contend that on or about July 6, 2000, Burgoni, executed an agreement which bound Alpha Omega to a Collective Bargaining Agreement ("CBA") between the Kern County Chapter of the National Electrical Contractors' Association and the International Brotherhood of Electrical Workers Local 428. (Doc. 36 at 3; see also Doc. 64-2 at 2, 5-11). Plaintiffs contend that Alpha Omega employed electricians who were covered by the CBA and failed to properly report and pay contributions on hours worked by the electrician employees to Plaintiffs as required by the CBA.

In April 2007, when Alpha Omega notified Plaintiffs of its intent to withdraw from the Kern County chapter of the National Electrical Contractors' Association, Plaintiffs directed Alpha Omega to submit to a review of its records, pursuant to the terms of the CBA. (Doc. 36 at 4). When Alpha Omega refused, Plaintiffs instituted this legal action to enforce the terms of the CBA. (Id. at 5).

Plaintiffs further allege that from January 1, 2004 through March 2007, defendant Burgoni misrepresented to Plaintiffs that he had not employed any electricians covered by the CBA and, thus, no contributions were due. (Id. at 7). Plaintiffs allege that they relied on Burgoni's statements, to their detriment, and therefore took no action to collect monthly pension contributions. (Id.)

Based upon the allegations in the FAC, Plaintiffs request judgment, pursuant to the terms of the CBA, in an amount due and owing, together with liquidated damages owed pursuant to 29 U.S.C. §1132(g)(2). Plaintiffs further request fringe benefit contributions owed by defendants for worked performed and subject to the CBA and attorney's fees and costs. (Id. at 9).

## IV. Application of Eitel Factors

When the Court exercises its discretion regarding the entry of a default judgment, it considers the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See* Eitel v. McCool, 782 F.2d 1470, 1471-1472 (9th Cir.1986). For the reasons set forth below, the Court finds the factors weigh in favor of granting Plaintiffs' motion for default judgment.

### A. Prejudice to Plaintiff

The first factor the Court considers is whether Plaintiff would suffer prejudice if default judgment is not entered. *See* Pepsico, Inc., 238 F.Supp.2d at 1177. Potential prejudice to plaintiffs militates in favor of granting a default judgment. Id. In general, where default has been entered against a defendant, plaintiffs have no other alternative by which to recover damages. Id.; J & J Sports Productions v. Rodriguez, 2010 U.S. Dist. LEXIS 20288, at * 7 (E.D. Cal. March 5, 2010). Since

defendants' answers have been striken and no other defendants remain, it appears that Plaintiffs have no opportunity to litigate the case on its merits and therefore has no other avenue to recover damages.

**B. Merits of Plaintiffs' Claims and Sufficiency of the Complaint**

Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together. *See* J & J Sports Productions v. Hernandez, 2010 U.S. Dist. LEXIS 48191, at *3, n. 4 (E.D. Cal. May 17, 2010). The Ninth Circuit has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." Pepsico, Inc., 238 F.Supp.2d at 1175 (citing Kleopping v. Fireman's Fund, 1996 U.S. Dist. LEXIS 1786, at *6 (N.D. Cal. Feb. 14, 1996)).

**1) ERISA**

Plaintiffs' FAC pleads that Defendants are signatories to a Letter of Assent which bound Alpha Omega to a CBA between the Kern County Chapter of the National Electrical Contractors' Association and the International Brotherhood of Electrical Workers Local 428. (Doc. 36 at 3; see also Docs. 64-1 at 2, 64-2 at 2, 5-11). Plaintiffs' FAC also alleges that Defendants employed electricians who were covered by the CBA and failed to properly report and pay contributions on hours worked by the electrician employees to Plaintiffs as required by the CBA. (Doc. 36 at 4-5; Doc. 64-3, Dec. of M. Surowitz).

Accepting the allegations of liability in Plaintiffs' FAC as true, Plaintiffs have stated a claim for relief. ERISA authorizes actions by fiduciaries on behalf of benefit plans to enforce an employer's obligation to make contributions to a multiemployer plan under the terms of the plan or a collective bargaining agreement. 29 U.S.C. ¶¶ 1132(a)(3) and (d)(1); 29 U.S.C. ¶ 1145. Plaintiffs contend Defendant was required by the CBA to remit payments and an accounting to the trust funds, but failed to do so. Thus, pursuant to ERISA, Defendants are liable to the trust funds. (See also Board of Trustees of IBEW Local Union No. 100 Pension Trust Fund v. Villa Elec., Inc. (E.D. Cal., May 19, 2008) 2008 WL 2128119 report and recommendation adopted, (E.D. Cal., June 13, 2008) 2008 WL 2441195.

/////

/////

**a) Fraud**

Under California law, Plaintiff must show the following to establish fraud: "a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." Moore v. Brewster, 96 F.3d 1240, 1245 (9th Cir. 1996); *see also* Cal. Civ. Code § 1572. The burden to establish fraud is "heavy," Robi v. Five Platters, Inc., 918 F.2d 1439, 1444 (9th Cir. 1990), because "when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009), quoting Fed. R. Civ. P. 9(b). Here, Plaintiffs have alleged that from January 1, 2004 through March 2007, Defendants knowingly misrepresented to Plaintiffs that he had not employed any electricians covered by the CBA and, thus, no contributions were due. (Doc. 36 at 7). Plaintiffs allege that they relied on Defendants statements, to their detriment, and therefore took no action to collect monthly pension contributions. (Id.) Based upon these allegations, Plaintiffs have stated sufficient facts to demonstrate a cause of action for fraud.

**b) Breach of Contract**

To establish breach of contract under California law, Plaintiff must establish that there was a contract under which Plaintiff performed or had an excuse for non-performance, and that Defendants breached the contract, which resulted in damages to Plaintiff. Wall Street Network, Ltd. v. New York Times, Co., 164 Cal.App.4th 171, 178, 80 Cal.Rptr.3d 6 (2008) ("The standard elements of a claim for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damage to plaintiff therefrom."). Accordingly, Plaintiffs have set forth sufficient facts to establish a cause of action for breach of contract. Plaintiffs allege that Defendants were bound by the CBA, failed to perform in accordance with the terms of the CBA, and as a result, Plaintiffs did not receive the accounting or the contributions which they were entitled to receive.

**C. Sum of Money at Stake**

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." Pepsico, Inc., 238 F.Supp.2d at 1176. Here, Plaintiff prays for judgment in the amount of $308,520.36. Plaintiff breaks down this amount as follows:

| | |
|---|---|
| Principal | $264,287.63 |
| Attorney's fees | $38,327.51 |

| | |
|---|---|
| Costs | $2,546.75 |
| Audit fees | $3,358.47 |
| Requested Judgment | $308,520.36 |

Generally, a request for a substantial amount of money weighs against the entry of default judgment. *See, e.g.*, Joe Hand Promotions v. Streshly, 655 F.Supp.2d 1136 (S.D. Cal. 2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); J & J Sports Productions v. Cardoze, 2010 U.S. Dist. LEXIS 74606, at * 12-13 (N.D. Cal. July 9, 2010) ("a large sum of money at stake would disfavor default damages," such as damages totaling $114,200). However, where the statutes involved contemplate such an award, the amount may not weigh against entry of default judgment (See Hernandez, 2010 U.S. Dist. LEXIS 48791, at *15).

Section 502(g) of 29 U.S.C. § 1132(g) provides for the following:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--
>
> **(A)** the unpaid contributions,
>
> **(B)** interest on the unpaid contributions,
>
> **(C)** an amount equal to the greater of--
>
> **(i)** interest on the unpaid contributions, or
>
> **(ii)** liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> **(D)** reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> **(E)** such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C.A. § 1132 (West)

Here, Plaintiffs request a substantial amount of money. However, given that the CBA and the involve statutes contemplate such awards, this factor does not weigh against Plaintiffs.

**a. Attorney's Fees**

Plaintiffs' total attorney's fees of $38,327.51 are based the amount paid to Plaintiff's former attorney for 86.4 hours of work in 2008 and 2009 at an hourly rate that ranged between $95 and $200 and for 86.9 hours of work performed from 2009 to present by Plaintiff's current attorneys associate at a rate of $250 per hour. (Doc. 64-4 at 2). The Court finds these hourly rates and the time spent on this case from inception to present to be reasonable. The Court likewise finds Plaintiffs' requested costs of $2,546.75 to be reasonable and appropriate. (Id. at 3).

**b. Principle**

The amount requested for principle consists of the unpaid principle contributions and the liquidated damages, both of which are authorized under the ERISA statute cited by Plaintiffs and provided for in the CBA. (See 29 U.S.C.A. § 1132(g) and Doc. 64-2 at 8, 64-3 at 10-11). Based upon the audit completed by Michael Surowitz, Plaintiffs have substantiated that Alpha Omega under reported hours worked by persons/companies on their payroll and therefore failed to pay the following contributions:

1. $3,632.63 for worked performed D. Kennedy
2. $85,414.18 for worked performed by Fulce Enterprises
3. $151,214.67 for worked performed by Tadoc Enterprises

Total contributions owed $240,261.48

The audit conducted by Plaintiffs calculates the liquidated damages at $24,026.15. (Doc. 64-3 at 17). According to the audit, the liquidated damages are based upon payments owed from 2004 through 2007. (Id.) Although Article V of the Letter of Assent signed by Alpha Omega also provides for a liquidated damages fee of 10% for each month Alpha Omega was delinquent, the parties signed a stipulation waiving any claim for liquidated damages prior to August 26, 2008. (Doc. 64-2 at 10; Doc. 22 at 2). Since Plaintiffs have not provided any legal authority to demonstrate why they are not bound by the Stipulation and Order signed by the Court on September 5, 2008—or, indeed, even addressed

this stipulation--the Court recommends that Plaintiffs' request for liquidated damages be **DENIED**. (Doc. 64-3 at 17).

**c. Audit Fees**

Plaintiff employed the services of Michael Surowitz, an auditor with Compliance Verification, Inc., to audit the books and records of Alpha Omega and determine the amount of unreported hours and contributions owed to Plaintiff, along with any liquidated damages for the time periods at issue. (Doc. 64-3). Mr. Surowitz billed Plaintiffs $3,358.47 for his services. (Id. at 4). Since the ERISA statute cited by Plaintiffs provides the Court with discretion to grant "other legal or equitable relief as the court deems appropriate," the Court finds that an award for audit services performed, as requested, is appropriate.

**D. Possibility of Dispute Concerning Material Facts**

The Court also considers the possibility of dispute as to any material facts in the case in deciding whether to enter default judgment. Generally, where a defendant is in default there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) though properly served, the defendant has not made any effort to challenge the Complaint or otherwise appear in this case. *See* Pepsico, Inc., 238 F.Supp.2d at 1177. Therefore, this factor weighs in favor of granting default judgment.

**E. Whether Default Was Due to Excusable Neglect**

Generally, the Court will consider whether Defendants' failure to respond is due to excusable neglect. *See* Eitel, 782 F.2d at 1472. Here, Defendants were properly served with the court orders that preceded the striking of their answers and directing the clerk to enter default. (Docs. 49, 50, 51, 52, 55). Moreover, Defendants received notice of Plaintiffs' motion for default judgment and did not respond. (Doc. 64). Given these circumstances, it is unlikely that Defendants' failure to answer, and the resulting defaults entered by the Clerk of Court, were a result of excusable neglect. See Shanghai Automation Instrument Co., Ltd. v. Kuei, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of

entry of default, as well as the papers in support of the instant motion"). As a result, this factor does not weigh against default judgment.

**F. Policy disfavoring default judgment**

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. Defendants' failure to respond to any of the Court's orders makes a decision on the merits somewhat impractical. While the policy underlying the Federal Rules of Civil Procedure favors decisions on the merits, this factor alone does not preclude an award in Plaintiffs' favor. Pepsi Co. Inc. v. Cal. Sec. Cans., 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002).

**V. Findings and Recommendations**

As noted above, the Court finds that the Eitel factors weighs in favor of an award of default judgment, and the Court would act within its discretion to grant default judgment. See Aldabe, 616 F.2d at 1092. Accordingly, IT IS HEREBY RECOMMENDED:

1. Plaintiffs' motion for default judgment against Defendant Burgoni and Tadoc (referred to above as "Alpha Omega") be **GRANTED**;

2. Plaintiffs be **AWARDED** principal in the amount of $240,261.48;

2. Plaintiffs be **AWARDED** audit fees in the amount of $3,358.47;

2. Plaintiffs be **AWARDED** costs in the amount of $2,546.75; and

3. Plaintiffs be **AWARDED** attorneys' fees in the amount of $38,327.51.

4. Plaintiffs' request for liquidated damages be **DENIED**.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections.

/////

/////

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **June 14, 2012**

**/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE